UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

Case No.: 6:23-cv-02362-CEM-LHP

SHERICIA CAMPBELL, on behalf of herself
and all others similarly situated,

    Plaintiff,

v.

MID-FLORIDA PATHOLOGY, LLC, a
Florida Limited Liability Company,
STRATEGIC BUSINESS OUTSOURCING,
LLC, a Florida Limited Liability Company,
OLEKSANDR ONUSHKO, Individually,
and GILMAR TADIOTO, Individually,

    Defendants.
_____/

**JOINT MOTION FOR FINAL APPROVAL OF COLLECTIVE ACTION
SETTLEMENT AGREEMENT**

Plaintiff Shericia Campbell, on behalf of herself and those similarly situated ("Plaintiff") and Defendants, Mid-Florida Pathology, LLC, Strategic Business Outsourcing, LLC, Oleksandr Onushko, and Gilmar Tadioto (collectively, "Defendants")(hereinafter, the "Parties"), by and through their undersigned counsel, entered into an Amended Collective Action Settlement Agreement (the "Agreement") (attached as Exhibit A) to resolve Plaintiff's claims on a collective basis. Plaintiff, through Counsel, sent notice to the settlement collective and the

settlement opt-in and objection periods have concluded. The Parties now move for final approval of this settlement. In addition, Plaintiff respectfully moves this Court for an Order approving an award of attorneys' fees and reimbursement of litigation costs incurred pursuant to 29 U.S.C. §216(b). Defendants do not oppose Plaintiff's request. In Support of this Joint Motion, the Parties submit the following:

### I.     FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Shericia Campbell filed this collective action against Defendants, pursuant to the Fair Labor Standards Act, 29 U.S.C. 201, et seq. ("FLSA") on December 8, 2023 (ECF No. 1) (the "Lawsuit" or the "Action"). *See* Declaration of Noah Storch attached as Exhibit B. In the Lawsuit, Plaintiff alleged that Defendants improperly failed to pay hourly employees full and proper overtime compensation for all hours worked over forty (40) hours in one or more workweeks in violation of the Fair Labor Standards Act, § 201 et seq. ("FLSA")[1]. Specifically, Plaintiff alleged that Defendants violated the FLSA by auto-deducting lunches and failing to record actual hours worked in one or more work weeks during the relevant period. Before filing the Lawsuit, the undersigned counsel spent a significant amount of time investigating the claims diligently after being retained.

---

[1] This case does not include any hourly drivers/couriers who worked for Defendants. A separate settlement was reached for the drivers/couriers in the case entitled *Ferry v. Mid-Florida Pathology, LLC., et al. See* Order approving the settlement, attached as Exhibit C.

On June 7, 2024, Defendants filed their Answer and Affirmative Defenses to Plaintiff's Amended Collective Action Complaint[2]. In their Answer, Defendants deny Plaintiff's allegations and assert that the non-exempt hourly employees, including Named Plaintiff, were compensated properly.

Pursuant to the Court's FLSA Scheduling Order, Plaintiff and Opt-in Plaintiffs filed interrogatory responses with the Court. (ECF Nos. 33-37). On March 25, 2024, Defendants provided Plaintiff's Counsel with pay and time records for Named Plaintiff and Opt-in Plaintiffs. Additionally, on May 8, 2024, the Parties attended a settlement conference and began to attempt to resolve the case. Counsel for Plaintiff and Counsel for Defendants began discussions and negotiations to attempt to settle the matter on a claims-made basis, i.e., the Parties intended to agree on a maximum amount Defendants would pay to settle all claims; the Parties would offer a pro-rata amount of a maximum amount to those putative collective members that decided to join the lawsuit.

---

[2] Defendants filed a Motion to Dismiss the Complaint or Motion for a more definite statement on March 5, 2024. (ECF No. 25). On March 26, 2024, Plaintiff filed an *Opposed* Motion for Leave to file an Amended Complaint. (ECF No. 30). Defendants filed a response in opposition to Plaintiff's Motion for Leave to file an Amended Complaint on April 5, 2024. (ECF No. 31). On April 8, 2024, The Court directed Plaintiff to file a Reply Brief on or before April 15, 2024(Endorsed Order No. 32). Plaintiff filed her Reply Brief on April 15, 2024. (ECF No. 38). The Court granted Plaintiff's *Opposed* Motion for leave to file an Amended Complaint to include named Defendant, Gilmar Tadioto, on April 24, 2024. (ECF No. 39). Plaintiff's Amended Complaint was filed on April 24, 2024 (ECF No. 40) and the Court issued the Summons for Defendant, Gilmar Tadioto. Defendant waived service for newly named Defendant, Gilmar Tadioto on May 8, 2024. (ECF No. 47).

3

On May 30, 2024, the Parties filed a Joint Report Regarding Settlement, requesting an additional fourteen (14) days to continue settlement negotiations. (ECF No. 48). The Parties continued discussions and negotiations to attempt to settle the matter but were unable to secure a settlement and filed a Case Management Report on July 1, 2024. (ECF 58). The Court entered its final Case Management Report on July 10, 2024. (ECF No. 61).

Named Plaintiff served each Defendant with her First Set of Discovery, including Interrogatories, Request for Production of Documents and Requests for Admissions on July 9, 2024. Defendants served responses to Plaintiffs' First Set of Discovery on August 9, 2024.

On September 9, 2024, Plaintiff filed her Opposed Motion to Conditionally Certify an FLSA Collective Action and to Authorize Notice. ("Notice Motion")(ECF No. 63). Defendants filed their Memorandum in Opposition to Plaintiff's Notice Motion on September 23, 2024. (ECF No. 64). The Parties conferred and agreed to file a Joint Motion to Stay remaining rulings on pending Motion for Forty-Five days pending the outcome of Mediation on September 30, 2024.(ECF No. 66).

The Parties filed a Notice of Scheduling Mediation to be held on November 14, 2024, at 9:30 a.m. before Mediator John Finnigan. (ECF No. 68). On November 14, 2024, the Parties attended mediation before John Finnigan, Esq. reaching a tentative agreement on the extended material terms of this claims-made settlement subject to the Court's approval.

4

Plaintiff served Defendant, Mid-Florida Pathology, LLC, with a Second Set of Interrogatories, Second Request for Production of Documents and a Second Request for Admissions on October 10, 2024. Defendant responded to Plaintiff's Second Set of Discovery on November 12, 2024.

On November 14, 2024, the Parties attended mediation before John Finnigan, Esq. reaching a tentative agreement on the extended material terms of this claims-made settlement subject to the Court's approval. At that time, among other agreements, under the terms of their Settlement Agreement and Release ("Agreement"), approve the settlement, approximately 95 current and former hourly paid employees who will be invited to participate in the Settlement and receive a pro-rata amount of the maximum amount Defendants agreed to pay. On November 20, 2024, the Mediation Report was filed with Mediator John Finnigan, Esq. (ECF No. 77).

Among other dissenting views, Defendants vigorously deny Plaintiff and/or the other hourly employees worked anywhere near the hours Plaintiff claims they worked while employed by Defendants.

On March 7, 2025, this Court conditionally certified the case as a FLSA Collective Action for settlement purposes only and preliminarily approved the amended collective action settlement agreement and release. *See* ECF 89.

The Notification Letter and Consent and Claim forms were distributed on March 31, 2025, to ninety (90) current/former hourly employees for Defendants. The

5

Court's forty (40) day deadline to opt-in to the case and/or submit an objection was May 10, 2025.

There are a total of thirty-seven (37) Class Members, including named Plaintiff Shericia Campbell. The Parties believe that the terms of the proposed settlement, which are summarized below, are fair and should be approved. The settlement grants relief for the Plaintiffs and provides an appropriately limited release from the Defendants for federal and state wage and hour claims relating to the overtime and the total settlement amount is properly discounted to account for the probability of success.

## II.   SUMMARY OF THE SETTLEMENT TERMS

The amended settlement agreement outlining the specific terms is attached as Exhibit A.  In accordance with the Class Agreement, Defendants have agreed to a qualified settlement fund and a maximum settlement amount of $350,000.00 dollars ("Common Fund"), which includes overtime, liquidated damages, fees, costs and any other amounts of any kind.  $203,000.00 of the Common fund constitutes potential payments to the FLSA putative collective members ("Net Common Fund") to be distributed on a *pro rata* basis in accordance with Paragraph 2(c ) of the settlement agreement.  In total, $125,680.88 of the $203,000.00 net common fund (62%) will be paid out to those who signed claim forms.  *See* Settlement Payout Chart Exhibit D.

Additionally, a payment in the amount of Three- Thousand and Five Hundred Dollars and Zero Cents ($3,500.00) as compensation for Named Plaintiff's claims for back wages, less standard deductions and withholdings, for which the appropriate IRS Form W-2 shall be issued and a payment in the amount of Three- Thousand and Five Hundred Dollars and Zero Cents ($3,500.00) as compensation for Named Plaintiff's claims for liquidated damages, for which the appropriate IRS Form 1099 shall be issued.

Plaintiff's attorneys' fees and costs, including the administrative costs of the notice and settlement process in the amount of $140,000.00. The costs to date are $8,313.02, which includes the administration of the Notice process.

The agreement also provided for mailing and e-mailing of the proposed Notice and Claims Administration Forms giving the FLSA Putative Collective Members an opportunity to "opt-in" to the settlement agreement, which has occurred as described below. Those individuals had 40 days to submit a Claim Form or object to the Settlement.

A total of thirty-six (36) Putative Collective Members opted in, which includes the three (3) opt-in Plaintiffs who previously joined the case[3]. The formula for the amount to be paid to each FLSA Putative Collective Member is described in Paragraph 2(e) of the Agreement and was described and submitted in the parties'

---

[3] The Claim and Consent forms were filed on May 16, 2025. *See* ECF No. 90.

previous Motion for Initial Approval (ECF No. ). If final approval is granted, all collective members who submitted valid and timely Claim Forms will release all claims that relate to the failure to pay overtime under the FLSA and under applicable state wage and hour laws as alleged in the Complaint relates to the alleged overtime of the Class Members. No other statutory or common law claim would be released.

### III.   NOTICE AND OBJECTION PERIOD

Pursuant to the amended settlement agreement, a settlement claims administrator, ILYM Group, Inc., undertook the notice process as approved by this Court. During the notice process, the claims administrator mailed and e-mailed the approved forms to a total of ninety (90) putative collective members[4]. In total, thirty-seven collective members returned timely and valid claims forms, including Named Plaintiff, Shericia Campbell and three (3) Opt-in Plaintiffs. During the notice process, the Parties did not receive any objections from collective members.

### IV.   STANDARD OF REVIEW

FLSA collective action settlement agreements require judicial approval. *Lynn's Food Stores, Inc. v. U.S. Dep't of Labor*, 679 F.2d 1350 (11th Cir. 1982). Because the settlement of a FLSA claim has no binding effect on absent class

---

[4] In the Parties' amended settlement agreement and initial Motion for Approval, the number of current/former hourly employees who were eligible to participate in the settlement was listed as 95, but after receiving the final class data and dates of employment, there were only a total of ninety(90) putative class members eligible to participate.

8

members—it only binds the potential class members who affirmatively opt-in—approval of the Settlement Agreement is governed by FLSA procedures, not the procedure prescribed for class actions. *See Calderone v. Scott,* 838 F.3d 1101, 1102 (11th Cir. 2016) ("The FLSA's § 216(b) requires plaintiffs to 'opt in' to be considered class members. In contrast, a Rule 23(b)(3) class action requires plaintiffs to 'opt out' if they do not wish to be bound by the court's judgment."). "Compromises of disputed claims are favored by the courts." *Williams v. First Nat'l. Bank*, 216 U.S. 582, 595 (1910). Indeed, there is a "policy of encouraging settlement of litigation." *Lynn's Food Stores, Inc.*, 679 F.2d at 1354). "Particularly in class action suits, there is an overriding public interest in favor of settlement." *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977); *see also Murchison v. Grand Cypress Hotel Corp.*, 13 F.3d 1483, 1486 (11th Cir. 1994) (noting that the Eleventh Circuit Court of Appeals "favor\[s] and encourage\[s] settlements in order to conserve judicial resources."). When asked to review and approve the terms of a settlement under the FLSA, there is a "strong presumption" in favor of approval. *Hamilton v. Frito-Lay, Inc.*, 2007 WL 328792, at *2 (M.D. Fla. Jan. 8, 2007), report and recommendation adopted, 2007 WL 219981 (M.D. Fla. Jan. 26, 2007). The settlement in this case was finalized after protracted negotiations. As the parties explain in more detail below, this Agreement is fair and reasonable and should be finally approved.

    **V.**    <u>**The Agreement Is Fair and Reasonable**</u>

The Court should finally approve the Agreement because it is fair and reasonable. The settlement was negotiated at arm's-length by experienced counsel; the amount Defendants have agreed to pay is fair and adequate; there is a significant risk to the collective members of recovering significantly less than the monies claimed and proving that they worked the hours claimed, and risk as to securing a final determination as to whether the case should proceed as a collective action, the collective members received adequate notice sufficient for each potential opt-in to assess his or her rights; the collective members are sufficiently similar for certification for settlement purposes; and the amount of attorneys' fees and costs requested are in line with sums previously awarded in similar cases. This settlement is particularly fair and reasonable because, unlike a class action settlement, only those individuals who voluntarily chose to become part of the lawsuit, and thus to participate in the settlement, are bound by it. Any potential collective member who did not join this settlement is not bound by it and can still pursue their own action.

    A.    <u>Settlement is the product of arm's length negotiations and of a bona fide dispute</u>

The settlement in this case was reached after counsel for the Parties had exchanged significant individualized collective member data, motion practice, engaged in several rounds of discovery, months of discussions and settlement conversations, engaged in mediation before a mediator recognized widely for his expertise in FLSA settlements, and settled the case. It is the opinion of counsel for

both parties that the settlement is fair, adequate, and reasonable. As courts have repeatedly held, the Court should defer to the judgment of counsel unless there is evidence of collusion. *See Weldon v. Backwoods Steakhouse, Inc.*, 2014 WL 4385593, at *3 (M.D. Fla. Sept. 4, 2014) ("Short of a trial, the Court is not in as good a position as the parties to determine the reasonableness of the settlement.").

Finally, "the fact that the continued negotiations of settlement agreement terms and Notice documents were lengthy" and continued and involving additional negotiation" further demonstrates the absence of collusion. *George v. Acad. Mortg. Corp.* (UT), 369 F. Supp. 3d 1356, 1370 (N.D. Ga. 2019). There is no evidence of collusion here.

      B.    <u>Probability of Success and of Decertification</u>

In considering settlements, courts should weigh the probability of success, the likelihood of delay in obtaining recoveries, and the risk inherent in any litigation. *See, e.g., Gevaerts v. TD Bank*, No. 1:14-CV-20744-RLR, 2015 WL 6751061, at *7 (S.D. Fla. Nov. 5, 2015). "FLSA claims typically involve complex mixed questions of fact and law." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 743 (1981). The claims here are no different.

As discussed above, the primary legal issue is the probability of the collective members recovering significantly less than the monies claimed and proving that they worked the hours claimed, and risk as to securing a final determination as to whether

11

the case should proceed as a collective action. This could involve questions of fact (such as the level of discretion exercised by collective members) and then questions of law for the Court to determine.

Additionally, disputes exist over the hours worked and claimed by Plaintiff, Opt-in Plaintiffs and the collective. During these litigation and settlement discussions, the formula for the amount to be paid to each Putative Class Member is described in paragraph (e) of the Amended Class Agreement and proves additional detail as to how it was calculated. It includes each Putative Class Member's individual weeks worked, along with an average hourly rate of pay, overtime rate and overtime compensation based on an estimated number of overtime hours worked each workweek in the relevant period.

The settlement provides immediate and substantial benefits to Plaintiff and the collective at an amount well-above the hours and weeks Defendants claim the collective worked. The strong likelihood that any recovery would take years also weighs in favor of approval. Indeed, public policy favors settlement, especially in cases such as this, where substantial resources can be conserved by avoiding time, cost, and protracted litigation. *See Lynn's Food Stores, Inc.*, 679 F.2d at 1354 ("...we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation"). Plaintiffs' claims are not likely to be decided until after extensive merits discovery, a motion for decertification, motions for summary judgment and perhaps a trial. Even if Plaintiffs were to prevail, there would

likely be an appeal. Absent settlement, the FLSA Putative Collective Members are not likely to see any recovery for years. That fact alone weighs strongly in favor of final approval.

### C.  Due Process Considerations

As explained above, the Parties conducted the notice process approved by the Court, which was fair and adequate, resulting in 62% of eligible collective members claiming their portion of the settlement. This is a higher percentage of claimants than is typically seen in class/collective action settlements. Also, no objections also support that the settlement was received and therefore should be approved. *See Lee v. Ocwen Loan Servicing, LLC*, Case No. 14-CV-60649, 2015 WL 5449813, at *5 (S.D. Fla. Sept. 14, 2015) ("Obviously, a low number of objections suggests that the settlement is reasonable....") (internal quotations omitted). Lastly, because any collective member who did not participate in this settlement is not bound and can file their claim, no absent class members exist for due process considerations.

### D.  This Court Should Grant Final Approval

In accordance with the legal principles outlined above, the Parties respectfully request the Court finally approve the Agreement. This adversarial action involves disputed factual and legal issues that could provide the Plaintiffs and the collective a complete or partial bar to their claims. Ultimately, the Parties recognized the significant risks in proceeding with this collective action lawsuit. The Parties agree

13

that the terms of settlement reached reflect a reasonable "give-and-take" on the major issues in dispute. The settlement also provides that the Plaintiffs will receive overtime compensation under the agreement for each workweek, even if they may not have worked any overtime hours in a particular workweek. The Parties agree that the negotiated terms of settlement reflect a reasonable compromise of all disputed issues, and that the negotiated settlement is in the Parties' best interest.

## VI. Attorneys' Fees and Costs

The Supreme Court and Eleventh Circuit held that "attorneys who create a common fund are entitled to be compensated for their efforts from a reasonable percentage of that fund." *Stahl v. Mastec, Inc.*, 2008 WL 2267469, *1 (M.D. Fla. 2008); citing *Camden I Condominium Assoc., Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991) ("Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class."); see also *Boeing Co. v. Van Gemert,* 444 U.S. 472 (1980); *In re Checking Account Overdraft Litig.*, 830 F.Supp.2d 1330, 1362 (S.D. Fla. 2011) ("\[T]he Eleventh Circuit made clear in Camden I that percentage of the fund is the exclusive method for awarding fees in common fund class actions"); *In re Equifax Inc. Customer Data Security Breach Litig.*, 999 F.3d 1247, 1278 (11th Cir. June 3, 2021) (describing the percentage method applied in Camden I).  In an FLSA collective action, "[a]lthough the Court must consider the reasonableness of any

award of attorney's fees, it is not required to conduct an in-depth analysis of the award unless it is unreasonable on its face." *Vogenberger v. ATC Fitness Cape Coral, LLC*, 2015 WL 1883537, at *5 (M.D. Fla. Apr. 24, 2015); *Hosier v. Mattress Firm, Inc.* 2012 WL 2813960 (M.D. Fla. June 8, 2012). In addition, the FLSA provides for a mandatory award of "Costs of the action to a prevailing plaintiff." *See* 29 U.S.C. § 216(b).

The lodestar approach should not be imposed through the back door via a 'cross-check.'" *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1362. Rather, the lodestar "creates an incentive to keep litigation going in order to maximize the number of hours included in the court's lodestar calculation." *In re Quantum Health Resources, Inc.*, 962 F. Supp. 1254, 1256 (C.D. Cal. 1997). Precisely for this reason, in Camden the Eleventh Circuit criticized the lodestar and the inefficiencies that it creates. 946 F.2d at 773-75. In so doing, the court "mandate[d] the exclusive use of the percentage approach in common fund cases, reasoning that it more closely aligns the interests of client and attorney, and more faithfully adheres to market practice." *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000) (emphasis added); see also *Alba Conte, Attorney Fee Awards* §2.7, at 91 fn. 41 ("The Eleventh ... Circuit [] repudiated the use of the lodestar method in common-fund cases"). Under *Camden,* courts in this Circuit regularly award fees based on a percentage of the recovery, without discussing lodestar at all. "[A] common fund is itself the measure of success and represents the

15

benchmark on which a reasonable fee will be awarded.... In this context, monetary results achieved predominate over all other criteria." *Camden*, 946 F.2d at 774 (citations and alterations omitted).

The Settlement Agreement provides that Plaintiffs' counsel will receive $140,000.00 in payment of attorney's fees and costs, including all costs and the costs of administration of the settlement[5]. These amounts were negotiated separately from those amounts proposed to be paid to the Plaintiffs and Opt-In Plaintiffs. Plaintiffs' Counsel asserts that these amounts are fair and reasonable, given the fees and costs incurred in this matter, the Defendants' vigorous defense, and the excellent results obtained on behalf of Plaintiffs and the Opt-In Plaintiffs. Plaintiffs' Counsel also asserts that he is highly experienced in wage and hour collective actions and has extensive experience litigating FLSA collective actions.

As stated in *Vogenberger v. ATC Fitness Cape Coral, LLC*, Case No. 2:14-cv-436-FtM-29CM, 2015 WL 1883537, at *4, (M.D. Fla., Order of April 15, 2015), in an FLSA case, "[a]lthough the Court must consider the reasonableness of any award of attorney's fees, it is not required to conduct an in-depth analysis of the award unless it is unreasonable on its face." 2015 WL 1883537, at \*5 (finding the requested fees reasonable "upon consideration of the time and effort spent by Plaintiffs' counsel, his experience litigating FLSA collective actions, as represented by the

---

[5] The total attorneys' fees total $140,000.00 and the total costs to date are $8,313.02, therefore the net fees total $131,686.98 or approximately 37%. See Exhibit B.

parties, and the time and effort by Plaintiffs' counsel that still will be necessary to effectuate the settlement"); *see also King v. My Online Neighborhood, Inc.*, No. 6:06-cv-435-Orl-22JGG, 2007 WL 737575, at *4 (M.D. Fla. Mar. 7, 2007). The Plaintiff actively participated in the negotiation of the settlement, including separate negotiation of the attorney's fees and reasonable costs and litigation expenses. Courts frequently approve attorneys' fee awards of forty percent in FLSA cases. *See, e.g., Mansfield v. Castaways Backwater Café, Inc*, No. 07 Civ. 401, 2008 U.S. Dist. LEXIS 62909, at *2 (M.D. Fla. Aug. 18, 2008) (adopting magistrate's order approving 40% contingency fee from settlement amount in FLSA action)[6].

Further, the amount being paid to Class Counsel will not reduce the amount being paid to the Plaintiff and Class Members. Class Counsel asserts that the amount of attorneys' fees and costs is reasonable in light of the fact that the settlement was only obtained after extensive investigation, several rounds of discovery, research, analysis, pre-mediation legal briefing, negotiations, and calculations. Class Counsel litigated this matter on a contingency fee basis, risking non-payment, further supports the attorneys' fees request[7]. Defendants do not oppose Class Counsel's

---

[6] Courts frequently approve attorneys' fee awards of forty percent in FLSA cases. *See, e.g.*, *Mansfield v. Castaways Backwater Café, Inc.*, No. 07 Civ. 401, 2008 U.S. Dist. LEXIS 62909, at *2 (M.D. Fla. Aug. 18, 2008) (adopting magistrate's order approving 40% contingency fee from settlement amount in FLSA action).

[7] Additionally, "[a] contingency fee arrangement often justifies an increase in the award of attorneys' fees." *In re Sunbeam,* 176 F. Supp. 2d at 1335(quoting *Behrens,* 118 F.R.D. at 548 ; *See also In re Continental Ill. Sec. Litig*., 962 F.2d 566 (7th Cir.1992) holding that when a common fund case has been prosecuted on a contingent basis, plaintiffs' counsel must be compensated adequately fpr the risk of non-payment);*Ressler,* 149 F.R.D. at 656("Numerous cases recognize

17

request for attorneys' fees and costs in the amounts provided by the Class Agreement. Moreover, the efficient resolution of this case, without prolonged litigation, was a direct result of Class Counsel's experience in handling complex litigation and extensive knowledge of wage and hour law. *See, e.g., Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1300 (11th Cir. 1988) (explaining that "\[f]rom the beginning and throughout a case, expertise in negotiations and tactics often advances a client's cause more quickly and effectively than the sustained and methodical trench warfare of the classical litigation model").

## VII.   Conclusion

Based upon the foregoing, the Parties request that the Court enter an order approving the settlement agreement proposed by the Parties, including the settlement amounts to the Plaintiffs, Plaintiffs' attorney's fees and costs, and all other terms of the Parties' Amended Settlement Agreement, and dismiss this Action with prejudice.

---

that the attorney's contingent fees risk is an important factor in determining the fee award."); *Walters v. Atlanta,* 652 F.Supp. 755, 759 (N.D. Ga. 1985), *modified,* 803 F.2d 1135(11th Cir.) As Judge King from the Southern District of Florida observed: Generally, the contingency retainment must be promoted to assure representation when a person could not otherwise afford the services of a lawyer….A contingency fee arrangement often justifies an increase in the award of attorney's fees. This rule helps assure that the contingency fee arrangement endures.  If this "bonus" methodology did not exist, very few lawyers could take on representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing. *Behrens,* 118 F.R.D. at 548.

Dated this 20th day of May 2025

Respectfully submitted,

| | |
|---|---|
| ***/s/ Noah E. Storch*** <br> Noah E. Storch, Esq. <br> Florida Bar No.: 0085476 <br> RICHARD CELLER LEGAL, P.A. <br> 10368 W. State Road 84, Suite 103 <br> Davie, FL 33324 <br> Telephone: (866) 344-9243 <br> Facsimile: (954) 337-2771 <br> E-mail: <br> **noah@floridaovertimelawyer.com** <br><br> *Trial Counsel for Plaintiff* | ***/s/ Megan J. Nowicki*** <br> Megan J. Nowicki, Esq. <br> Florida Bar No. 1000366 <br> J. Stephen McDonald, Esq. <br> Florida Bar No. 0468940 <br> Robert Clayton Roesch, Esq. <br> Florida Bar No. 13931 <br> SHUFFIELD, LOWMAN & WILSON, P.A. <br> 1000 Legion Place, Suite 1700 <br> P.O. Box 1010 <br> Orlando, FL 32802-1010 <br> Telephone: (407) 581-9800 <br> Facsimile: (407) 581-9801 <br> E-mail: <br> **mnowicki@shuffieldlowman.com** <br> **smcdonald@ShuffieldLowman.com** <br> **rclayton@shuffieldlowman.com** <br><br> *Attorneys for Defendant* |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 20, 2025, I electronically filed the foregoing with the Clerk of the Court by using the Court's CM/ECF filing system. I also certify that the foregoing document is being served this day on all counsel of record in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Noah E. Storch*
Noah E. Storch, Esq.