## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

### Case No.: 6:23-cv-02362-LHP

SHERICIA CAMPBELL, on behalf of herself
and all others similarly situated,

     Plaintiff,

v.

MID-FLORIDA PATHOLOGY, LLC, a
Florida Limited Liability Company,
STRATEGIC BUSINESS OUTSOURCING,
LLC, a Florida Limited Liability Company,
OLEKSANDR ONUSHKO, Individually,
and GILMAR TADIOTO, Individually,

     Defendants.

_____/

### SUPPLEMENTAL BRIEF IN SUPPORT OF JOINT MOTION FOR APPROVAL OF SETTLEMENT

     Plaintiff, SHERICIA CAMPBELL, on behalf of herself and those similarly situated ("Plaintiff"), by and through undersigned counsel, and pursuant to this Court's Order dated July 17, 2025, submit this Supplemental Brief in Support of the Parties Joint Motion for Approval of Settlement (ECF No. 93)[1] as follows:

---

[1] The Parties filed the Opt-In Forms on May 16, 2025. *See* ECF No. 90. The Parties also filed the class payout chart with the Joint Motion for Approval on May 20, 2025, which specifically identified the date the Claim Form was received, the total amount being paid, broken down by W-2 Wages and Liquidated Damages. *See* ECF No. 93-3.

## **INTRODUCTION/BACKGROUND INFORMATION**

Briefly, and by way of background, Plaintiff filed the instant collective action against Defendants, MID-FLORIDA PATHOLOGY, LLC, STRATEGIC BUSINESS OUTSOURCING, LLC, OLEKSANDR ONUSHKO, and GILMAR TADIOTO ("Defendants") (Plaintiff and Defendants collectively referred to as the "Parties") asserting that Defendants failed to pay hourly employees full and proper overtime compensation for all hours worked over forty (40) hours in one or more workweeks in violation of the Fair Labor Standards Act ("FLSA"). Specifically, Plaintiff alleged that Defendants violated the FLSA by auto-deducting lunches and failing to record actual hours worked in one or more work weeks during the relevant period. Defendants denied all allegations of wrongdoing and identified opt-in participants precluded from serving as eligible participants in this action.

Ultimately, the Parties reached a settlement, which the Parties assert is fair and reasonable, and takes into account the risks for each of the Parties, and should be approved.

This Honorable Court issued an Order requiring a joint supplemental brief addressing the reasonableness of the requested attorneys' fees. *See* ECF No. 94 at p. 4. In the Court's Order, the Court notes that the attorneys' fees of $131,689.98 equates to 37.6% of the Common Fund, which is nearly the same percentage of the amount to be paid to the entire settlement class, including the named Plaintiff, from

the Common Fund ($132,680.88, or 37.9% of the Common Fund). *Id.* at pp. 2-3. Further, the Court indicates that the Parties did not provide explanation as to how the requested fees are reasonable in light of the smaller settlement class. *Id.* at p. 3.

The Parties submit that the attorneys' fees are reasonable and that review of class participation is not the appropriate measurement of a settlement's merits.

## MEMORANDUM OF LAW

### A. Determine Attorneys' Fees In Common Fund Cases.

As the Court noted, the attorneys' fees of $131,689.98 equates to 37.6% of the Common Fund. *Id.* at pp. 2-3.[2] It is not improper or inappropriate to determine attorneys' fees in common fund cases by a percentage of the total common fund. Eleventh Circuit precedent and this District's rulings, which have agreed that "[a]ttorneys who create a common fund are entitled to be compensated for their efforts from a reasonable percentage of that fund." *Stahl v. Mastec, Inc.*, 2008 WL 2267469, *1 (M.D. Fla. 2008); citing *Camden I Condominium Assoc, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991) ("Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class."). The Court in *Stahl*, a case from this District (Tampa Division), stated:

---

[2] Undersigned Counsel's billing rate is $450.00.

3

> The following factors are considered in determining the appropriate percentage of the common fund to be awarded as fees: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. Citing *Camden I Condominium Assoc, Inc.,* 946 F. 2d 768 (11th Cir. 1991).

Of significance, the Supreme Court and the Eleventh Circuit have held it to be appropriate that the attorney's fees be awarded on the entire Maximum Gross Settlement Amount even though the amounts that would be paid to settlement class members who do not file a claim form will remain the sole and exclusive property of the defendant. *See Stahl,* 2008 WL 2267469, *1 (M.D. Fla. 2008) citing *Boeing Co. v. VanGemert, et al*, 444 U.S. 472, 480-81 (1980); *Waters v. International Precious Metals Corp.*, 190 F.3d 1291, 1296-97 (11th Cir. 1999).

Case law from throughout the country supports the payment of attorneys' fees as a percentage of the total common fund. *See Seghroughni v. Advantus Restaurant, Inc.*, 2015 WL 2255278, at *1 (M.D. Fla. May 13, 2015) (approving attorney's fee of one-third of the settlement fund);   *Prasker v. Asia Five Eight LLC, et. al*, 2010 WL 476009, *6 (S.D.N.Y. 2010) (stating that "[i]n wage and hour class action lawsuits, public policy favors a common fund attorneys' fee award" and awarding

4

an attorney fee payment of $346,500 out of the common fund of $1,050,000 (33%)); *Duchesne v. Michael Cetta, Inc., et. al.*, 2009 WL 5841175, *3 (S.D.N.Y. 2009) (approving attorney fees of $1,015,000 out of a common fund of $3,150,000, or 32.2%, and stating that the "percentage of recovery" method is consistent with the trend in the Second Circuit); *Faltaous v. Johnson and Johnson, et. al.*, 2007 WL 3256833, *10 (D.N.J. 2007) ("attorneys' fees of approximately 30 percent of the common fund are also regularly awarded in labor and employment law class actions.") (internal citations omitted); *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, 2009 WL 5851465, *5 (S.D.N.Y. 2009) (awarding 33% of common fund of $3,265,000.00 as attorneys' fees); *Stahl*, 2008 WL 2267469 at *2 (M.D. Fla. 2008) (Judge Whittemore approving attorney fees of $3,744,500.00 out of a common fund of $13,137,365.00); *Reyes v. Buddha-Bar NYC*, 2009 WL 5841177 (S.D.N.Y 2009) (awarding attorneys' fees of 33% from common fund of $710,000.00); *Noell v. Suncruz Casinos*, 2009 WL 541329, *1 (M.D. Fla. 2009) (Judge Moody approving attorney fee payment of 30% of the common fund in a WARN Act case); and *Moultry v. Cemex, Inc.*, 8:07-cv-453-T-MSS (August 20, 2008) (Scriven, Mag. J.) (noting that the retainer agreement allows Plaintiffs' counsel to request attorneys' fees at 40% of the total recovery, which would be $310,000; Plaintiffs' counsel agreed to accept only $250,000 (which is approximately 32.25% of the common fund)).

A purpose of utilizing this method is to encourage early settlements by not penalizing counsel for being efficient, which ensures that competent counsel will be willing to undertake risky litigation. The Eleventh Circuit has stated, "[f]rom the beginning and throughout a case, expertise in negotiations and tactics often advances a client's cause more quickly and effectively than the sustained and methodical trench warfare of the classical litigation model." *Norman v. The Housing Authority of the City of Montgomery*, 836 F.2d 1292, 1300 (11th Cir. 1988).

Here, Plaintiff's Counsel, as well as Defendants' Counsel, resolved this matter as early as possible, without causing Defendants' counsel to expend additional time defending through decertification and trial, which would have increased Defendants' investment in the defense of the case and potentially decrease the settlement funds available to the settlement class. Defendants' counsel vehemently denied and defended against the allegations, asserting that the non-exempt hourly employees, including the named Plaintiff, were compensated properly. Nevertheless, Plaintiff's counsel pursued the instant case and successfully negotiated a settlement that encompassed 95 prospective class participants to join the instant case.

During the course of this case, the Parties complied with the Court's FLSA Scheduling Order, answering the Court's Interrogatories, exchanging pay and time records, and attending a settlement conference, which did not result in a settlement, and, therefore, a Case Management Report was filed. *See* ECF No. 58.  Named

Plaintiff served each Defendant with her First Set of Discovery, including Interrogatories, Request for Production of Documents and Requests for Admissions on July 9, 2024. Plaintiff also served Defendants with a 30(b)(6) Notice of Deposition. Defendants served responses to Plaintiffs' First Set of Discovery on August 9, 2024. Plaintiff also served Defendant, Mid-Florida Pathology, LLC, with a second set of discovery, which Defendant responded to. Defendants opposed Plaintiff's Motion to Conditionally Certify an FLSA Collective Action and to Authorize Notice. *See* ECF No. 64. The procedural history reflects that the Parties vigorously litigated the instant case, including discovery, motion practice, as well as mediation, and Plaintiff's Counsel undertook significant risk if the class certification were lost and/or if this case was lost.. Plaintiff and the Opt-In Plaintiffs, except for Tiffany Backhus, benefitted from Plaintiff's Counsel's efforts. All these factors, and case law, warrant that attorneys' fees in this matter be found to be reasonable at 37.6% of the total Common Fund, as agreed to by the Parties in the Settlement Agreement.

**B. Reviewing Class Participation Is Not The Appropriate Gauge Of A Settlement's Merits.**

There is no hard and fast rule mandating a certain percentage of a common fund which may reasonably be awarded as a fee because the amount of any fee must be determined upon the facts of the case. *See Camden I Condominium Ass'n, Inc.* 946 F. 2d at 774.

The number of actual Opt-In Plaintiffs being less than the number of potential Opt-In Plaintiffs is expected.

Studies conducted show that class participation in FLSA collective actions are low, regardless of the recovery achieved for the class. *See* Andrew Brunsden, *Hybrid Class Actions, Dual Certification, and Wage Law Enforcement in the Federal Courts*, Berkeley J. Emp. & Lab. L., 269, Volume 29 (2008). The data indicated that for the 21 opt-in collective actions analyzed, the average opt-in rate was 15.71%. *Id.* at p. 294.

As such, it is clear that in FLSA collective actions participation rates is not a reliable factor to determine whether the attorneys' fees are reasonable.

For example, the original collective class consisted of 95 potential members, including the named Plaintiff, along with 94 potential Opt-In Plaintiffs. Of the 94 potential Opt-In Plaintiffs, 91 were sent the Notice and Claim Form, as three (3) were undeliverable. Of the 91 potential Opt-In Plaintiffs who received notice, thirty (30) are current employees (or were current employees at the time the Notice and Claim Form were sent) and 61 are former employees.

With regard to the 37 individuals who joined this action, one (1) is the named Plaintiff; thirty (30) are former employees; and only six (6) are current employees.

As such, including the named Plaintiff, just over half of the 61 former employees who were potential Opt-In Plaintiffs joined the instant action (31/61 =

8

50.8%).  This means that former employees comprise of approximately 83.7% of the individuals who joined this action, demonstrating that most participating class members are former employees who face no risk of retaliation.

Reasons for failure to participate can vary, but those reasons could include that potential class members do not join a settlement so they do not appear to be against their employer and/or disloyal because of a retaliation risk; although, there is no claim nor proposition that any of the Defendants engaged in any retaliation in regards to this particular class action.  This, however, is not a consideration for the reasonableness of the settlement and/or reasonableness of the attorneys' fees.  This factor, and others, are outside the control of the attorneys involved and it would be patently unfair and unjust if these factors were considered.

Simply, it is improper to use the extent of participation by the putative class in the settlement to determine to what amount of attorneys' fees should be paid out. The risk remained the same and there was no reduction in the issues presented.

The result achieved for the class is a strong result, with almost 40% of the total potential Opt-In Plaintiffs joining.

The attorneys' fees of 37.6% falls within the range approved by courts in FLSA cases, especially with a very good participation rate.

The Middle District of Florida approved award of attorneys' fees in *Ferry v. Mid-Florida Pathology, LLC*, No. 5:23-cv-327-PRL (M.D. Fla. Aug. 28, 2024),

9

involving Mid-Florida Pathology, LLC, Strategic Business Outsourcing, LLC, and Oleksandr Onushko, and similar claims. This provides directly applicable precedent supporting the reasonableness of the attorneys' fees and costs.

## **<u>CONCLUSION</u>**

Based on the foregoing, it is requested that the settlement, including attorneys' fees, along with the costs, be approved.

Dated this 11th day of August, 2025

Respectfully Submitted,

**<u>/s/Noah E. Storch</u>**
Noah E. Storch, Esq.
Florida Bar No. 0085476
RICHARD CELLER LEGAL, P.A.
7951 SW 6th Street, Suite 316
Plantation, Florida 33324
Telephone: (866) 344-9243
Facsimile: (954) 337-2771
E-Mail: noah@floridaovertimelawyer.com

*Counsel for Plaintiff*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 11, 2025, I electronically filed the foregoing with the Clerk of the Court by using the Court's CM/ECF filing system. I also certify that the foregoing document is being served this day on all counsel of record in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Noah E. Storch*
Noah E. Storch, Esq.